IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GENEVA COLEMAN                       :

                                     :

    v.                               :   Civil Action No. DKC 13-3649

                                     :

JEH JOHNSON, Secretary,              :
Department of Homeland Security

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination action is the motion to dismiss, or in the alternative for summary judgment, filed by Defendant Jeh Johnson.[1] (ECF No. 10). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion will be granted.

## I.  Background

### A.  Factual Background

Plaintiff Geneva Coleman worked as a Human Services Specialist in the Applicant Services Department at the Federal Emergency Management Agency ("FEMA"), an agency of the United States Department of Homeland Security. Plaintiff worked at the Maryland National Processing Service Center ("MNPSC") located in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Jeh Johnson, the Secretary of the United States Department of Homeland Security and the successor of Rand Beers, the original named Defendant, has been substituted as Defendant.

Hyattsville, Maryland.   In March 2006, Plaintiff filed an informal EEO complaint of discrimination after her supervisor listed her as "Absent without Official Leave" ("AWOL") when Plaintiff called in sick on a day she was scheduled to work. The issue was resolved when Plaintiff produced a doctor's note to verify her illness.   The AWOL was then removed from her record, and Plaintiff subsequently withdrew her complaint in April 2006.

Several months later, on August 1, 2006, Plaintiff's supervisor gave her one "Less Than Expected" ("LTE") rating on her end-of-quarter performance evaluation due to her low productivity during the third quarter.   The threshold for receiving a LTE rating due to low performance was performing at less than 50% production for more than 40 hours of casework time.   Plaintiff's production rate was 41% for the third quarter.   Plaintiff received ratings of "On Target" for the remaining nine performance criteria.

Less than a week later, on August 7, 2006,[2] Plaintiff began attending what was supposed to be a week-long training workshop. On the first or second day of the training session, Plaintiff stated loudly that she could not hear the training facilitator,

---

[2] The evidence in the record is conflicting but suggests that the event in question occurred on either August 7 or August 8, 2006, Plaintiff's first or second day at the training workshop.

Alice Sheen.  In response, the training facilitator asked Plaintiff to move to the other side of the room where she would be able to hear better.  Plaintiff refused to move and responded, "What am I supposed to do, sit on top of someone?" (ECF No. 10-3, at 57).  Because Plaintiff continued to interrupt the training, Ms. Sheen asked if she could speak with Plaintiff in the hallway.  After a brief conversation, Plaintiff volunteered to leave the training and return to work in order to diffuse the situation.  Ms. Sheen informed Plaintiff's supervisor why she had been removed and recommended that Plaintiff not be permitted to attend the remainder of the training sessions that week.  Plaintiff's supervisors affirmed this decision.

On October 4, 2006, Plaintiff was involved in a physical altercation with another FEMA employee, Saucha Wormley.  While at work, Ms. Wormley approached Plaintiff inquiring about repayment for a two dollar loan she had given Plaintiff. Plaintiff became upset, insisting that she had already repaid the loan.  The two women moved to a stairwell near their workstations and continued to engage in a verbal argument. Other coworkers overheard Plaintiff and Ms. Wormley yelling at one another and using profanity.  Another coworker observed Plaintiff cursing at Ms. Wormley as Ms. Wormley backed away from Plaintiff, and then saw Plaintiff kick Ms. Wormley.  Plaintiff

3

admitted to kicking Ms. Wormley but stated that she did it in self-defense because Ms. Wormley attempted to punch her. Plaintiff and Ms. Wormley were sent home after the incident and FEMA began an investigation.  FEMA's investigation did not reveal any evidence supporting Plaintiff's statement that she was physically attacked and acted in self-defense when she kicked Ms. Wormley.  FEMA terminated Plaintiff On October 11, 2006.  Plaintiff's termination letter states that she was terminated for "Conduct Unbecoming of a Federal Employee" as a result of her physical altercation with Ms. Wormley.[3]  (ECF No. 10-3, at 190-91).  On October 17, Ms. Wormley was suspended from work for three days without pay due to her involvement in the altercation.  (ECF No. 10-3, at 214-16).

**B.   Procedural Background**

On October 6, 2006, two days after Plaintiff was involved in the altercation with Ms. Wormley, she filed a formal EEO complaint of discrimination challenging her LTE rating on her third quarter performance evaluation and her removal from the training workshop.  In her EEO complaint, Plaintiff alleged that she was discriminated against based on her race, sex, and age, and retaliated against based on her prior protected activity of

---

[3]  Plaintiff's letter states that her "disruptive and inappropriate behavior in the workplace on August 8, 2006" was also considered when determining what penalty should be imposed for her misconduct on October 4, 2006.  (ECF No. 10-3, at 191).

filing an EEO complaint in April 2006.  (ECF No. 10-3, at 25-28).  After Plaintiff was terminated, she amended her October 6 EEO complaint to include allegations of wrongful termination and retaliation.  (*Id.* at 29-32).

After FEMA conducted an investigation, Plaintiff timely requested a hearing before an EEOC Administrative Judge.  The EEOC Administrative Judge issued a written decision finding that Plaintiff could not establish a *prima facie* case of discrimination, and could not show that the Agency's legitimate, nondiscriminatory reasons for its treatment of Plaintiff were a pretext for discrimination.  (ECF No. 10-4).  The Administrative Judge dismissed Plaintiff's case on September 4, 2009, and the Agency issued a Final Agency Decision adopting the Administrative Judge's findings.  (ECF No. 10-2, at 2).  Plaintiff timely appealed to EEOC's Office of Federal Operations, which reviewed the record and determined that it supported the Administrative Judge's decision.  (*Id.* at 3-4).  Plaintiff requested a reconsideration of this determination, which was denied on September 4, 2013.  (ECF No. 10-5).

Plaintiff, proceeding *pro se*, commenced this suit on December 3, 2013 against Defendant.  (ECF No. 1).  The same day Plaintiff also filed a motion to proceed *in forma pauperis*, which was granted on December 5, 2013 (ECF No. 4), and a motion for appointment of counsel, which was denied without prejudice

(ECF No. 4).  Plaintiff, a forty-seven year old African American female, alleges that she was discriminated against by FEMA based on her race, gender, and age, and was retaliated against due to "prior protected EEO" activity.[4]  (ECF No. 1, at 1).  Plaintiff points to three incidents during which she alleges she was discriminated or retaliated against:  (1) on August 1, 2006, she received an LTE rating for her third quarter performance evaluation; (2) on August 7, 2006, she was removed from a training class; and (3) on October 11, 2006, she was terminated.[5]

On March 20, 2014, Defendant filed a motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 10). Plaintiff was mailed a *Roseboro* notice the same day, which advised her of the pendency of the motion and her entitlement to respond within seventeen days from the date of the letter. *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir. 1975) (holding

---

[4] Plaintiff's complaint will be construed as stating claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA").

[5] Plaintiff's complaint indicates that she believes by filing her complaint in this court she is somehow appealing the findings of the EEOC Administrative Judge.  As aptly noted by Defendant, however, Plaintiff's suit is not an appeal from an administrative proceeding, but a separate civil action in which her claims will be reviewed *de novo*.  *See Scott v. Johanns,* 409 F.3d 466, 469 (D.C. Cir. 2005) ("In a Title VII suit brought after a final administrative disposition finding no discrimination, the district court considers the discrimination claim de novo." (*quoting Chandler v. Roudebush,* 425 U.S. 840 (1976)).

that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment). In response, Plaintiff again moved for the appointment of legal counsel, a request which was again denied, however, Plaintiff was given an extension to respond to Defendant's motion. (ECF No. 15). Plaintiff filed an opposition (ECF No. 16), and Defendant replied (ECF No. 19).

## II. Standard of Review

Defendant has moved to dismiss or, in the alternative, for summary judgment. "'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli,* 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[] as true the well-pled facts in the complaint and view[] them in the light most favorable to the plaintiff." *Brockington v. Boykins,* 637 F.3d 503, 505 (4th Cir. 2011) (citation omitted).

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450

(4th Cir. 2007).  If the court does consider matters outside the
pleadings, "the motion must be treated as one for summary
judgment under Rule 56," and "[a]ll parties must be given a
reasonable opportunity to present all the material that is
pertinent to the motion."  Fed.R.Civ.P. 12(d); *see also Finley
Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109
F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to
dismiss supported by extraneous materials cannot be regarded as
one for summary judgment until the district court acts to
convert the motion by indicating that it will not exclude from
its consideration of the motion the supporting extraneous
materials.").  It is appropriate to consider the extraneous
materials submitted by Defendant, and Plaintiff had notice by
virtue of the motion filed by Defendant.  *See Warner v. Quilo,*
No. ELH-12-248, 2012 WL 3065358, at *2 (D.Md. July 26, 2012)
("When the movant expressly captions its motion 'in the
alternative' as one for summary judgment, and submits matters
outside the pleadings for the court's consideration, the parties
are deemed to be on notice that conversion under Rule 12(d) may
occur[.]") (*quoting Laughlin v. Metro. Wash. Airports Auth.,* 149
F.3d 253, 261 (4th Cir. 1998)).  Accordingly, Defendant's motion
shall be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides
that the "court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (*quoting* Fed.R.Civ.P. 56(e)).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).  At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (*quoting Drewitt v. Pratt,* 999 F.2d

9

774, 778–79 (4th Cir. 1993)) (internal quotation marks omitted)
(*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986)).

## III. Analysis

Defendant argues that Plaintiff has failed to establish a
*prima facie* case of discrimination or retaliation.
Additionally, Defendant argues that, to the extent Plaintiff is
deemed able to establish a *prima facie* case, she is unable to
show that Defendant's legitimate, nondiscriminatory reasons for
its actions against Plaintiff were a pretext for discrimination.
(ECF No. 10-1, at 1).

To survive a motion for summary judgment, a plaintiff
making Title VII claims must provide evidence of intentional
discrimination, which includes acts of retaliation, through one
of two avenues of proof:  (1) direct or circumstantial evidence
that retaliation motivated the employer's adverse employment
decision, or (2) the *McDonnell Douglas* "pretext framework" that
requires a plaintiff to show that "employer's proffered
permissible reason for taking an adverse employment action is
actually a pretext for [retaliation]."  *Hill v. Lockheed Martin
Logistics Management, Inc.,* 354 F.3d 277, 284–85 (4th Cir. 2004)
(*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct.
1817, 36 L.Ed.2d 668 (1973)).

Under the *McDonnell Douglas* framework, once the plaintiff
meets her initial burden of establishing a *prima facie* case for

discrimination or retaliation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill,* 354 F.3d at 285. Once the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (*quoting Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.,* 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks omitted).

**A.   Race, Sex, and Age Discrimination**

Plaintiff argues that Defendant unlawfully discriminated against her on the basis of her race, sex, and age, when it: (1) gave her a poor performance review; (2) removed her from a training workshop; and (3) terminated her employment. Plaintiff has presented no direct evidence to support her claims. Absent direct evidence, Plaintiff must prove her case circumstantially using the pretext framework established in *McDonnell Douglas*.

### 1.   Poor Performance Evaluation

Defendant first argues that Plaintiff is unable to establish a *prima facie* case of discrimination regarding her LTE performance rating because, *inter alia*, a poor performance evaluation is not an "adverse employment action" that constitutes actionable discrimination. (ECF No. 10-1, at 6). Defendant also contends that even if Plaintiff could prove a *prima facie* case of discrimination based on the LTE rating, she has not provided any facts to rebut the Defendant's legitimate, nondiscriminatory reason for her poor performance review — the fact that her production rate was 41% for that quarter. (*Id.* at 11).

Plaintiff counters that two employees whose production levels were at the same level as hers were treated more favorably by being given "On Target" ratings. (ECF No. 1, at 3-4). Plaintiff also contends that her low productivity rating was not justified because she was absent from work for much of the third quarter for various reasons.

Plaintiff appears to be making a discrimination claim based on disparate treatment by arguing that several of her coworkers, who also had low productivity rates, were treated more favorably by not being given an LTE rating despite their low production rates, and instead being given opportunities to improve their performances. To establish a *prima facie* case of discrimination

12

based on disparate treatment, Plaintiff must show that: (1) she is a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations at the time of the adverse employment action; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside of her protected class more favorably. *See Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010) (outlining elements of a *prima facie* case of discrimination under Title VII), *aff'd on other grounds,* 132 S.Ct. 1327 (2012); *Hill,* 354 F.3d at 285 (outlining elements of *prima facie* case for age discrimination under ADEA).

Plaintiff fails to establish a *prima facie* case of disparate treatment discrimination based on her receipt of the LTE performance rating because it does not constitute an adverse employment action. An employer's issuance of poor performance evaluation, without further action to alter detrimentally the terms of a recipient's employment, does not constitute an adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 377 (4th Cir. 2004) ("[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" (*quoting Spears v. Missouri Dep't of Corr. & Human Res.,* 210 F.3d 850, 854 (8th Cir. 2000)). Plaintiff has provided no evidence that the

performance evaluation she received on August 1, 2006 had any impact on the terms of her employment, and Defendant took no additional adverse employment action toward Plaintiff following its issuance of the LTE productivity rating.

Moreover, Plaintiff has failed to identify sufficient comparators outside of her protected class, who were similarly situated and treated more favorably by FEMA management. As Defendant points out, although Plaintiff argues that there were several other employees who were treated more favorably even though they similarly had low productivity levels, all of the employees identified were within Plaintiff's various protected classes. The "comparators" Plaintiff identified in the administrative proceeding — Patricia Willis, Debbie Davis, and Cora Jacobs — were African-American, female, and one of them was over forty years old. (ECF No. 10-3, at 9 and 56). Accordingly, Plaintiff has also not established a *prima facie* case of race, age, or sex discrimination because she has not identified persons outside of her protected class that were similarly situated but treated more favorably than she, nor has she provided any other circumstantial evidence that her receipt of a poor performance evaluation was due to her race, sex, or age. *See Miles v. Dell,* 429 F.3d 480, 490 n.7 (4th Cir. 2005) (noting that "Title VII's prima facie case functions to screen out cases whose facts give rise to an inference of non-

discrimination"). Furthermore, Bellance R. Green ("Faye Green"), one of Plaintiff's supervisors, stated in her affidavit that the women Plaintiff identified as being given more favorable treatment, were not similarly situated because their production levels were above 50% or they had not worked 40 hours, meaning they did not meet the criteria for receipt of the LTE rating, whereas Plaintiff did.  (ECF No. 10-3, at 97); *see Popo v. Giant Foods LLC,* 675 F.Supp.2d 583, 589 (D.Md. 2009) ("Similarly situated employees are alike with respect to performance, qualifications, and conduct.") (internal citation and quotation marks omitted).

   **2.  Removal from Training Workshop**

   Defendant argues that Plaintiff cannot establish that she was subjected to an adverse employment action by being removed from FEMA's training workshop because her removal did not alter the terms or conditions of her employment.  (ECF No. 10-1, at 11).  Defendant adds that even if this did constitute an alteration of her terms of employment, FEMA management had already agreed to reschedule Plaintiff for the same training session later that year.  Finally, Defendant contends that it had legitimate, nondiscriminatory reasons for asking Plaintiff to leave the training — Plaintiff was being disruptive and other training participants began to complain about her outbursts.

In response, Plaintiff makes arguments justifying why she should not have been removed from the training purportedly to support why her removal was discriminatory.  She states that she was "not disruptive because the entire room was already chaotic" and that the "training facilitator was already cranky and rude." (ECF No. 1, at 4).  Plaintiff speculates that the training facilitator who removed her from the training and her supervisors who approved of her removal, "discriminated against [her] on the basis of [her] gender, race, age, and reprisal." (ECF No. 10-3, at 58).

Taking the facts in the light most favorable to Plaintiff, she has failed to establish a *prima facie* case of discrimination based on her removal from the FEMA training workshop.  Similar to receipt of a poor performance evaluation, an employer's failure to provide training, without a more concrete impact to the terms and conditions of one's employment, simply does not constitute an adverse employment action.  *See Chika v. Planning Research Corp.,* 179 F.Supp.2d 575, 584-85 (D.Md. 2002) (noting that the plaintiff must establish that denial of training opportunities "altered the terms and conditions of his employment" in order to constitute an "adverse employment action" under Title VII); *see also Casey v. Mabus,* 878 F.Supp.2d 175, 184 (D.D.C. 2012) (finding that the "mere denial of training opportunities [] does not constitute an adverse

16

employment action" unless it results in "an objectively tangible harm"). More importantly, even if Plaintiff were able to establish a *prima facie* case, she has not provided any evidence to show that Plaintiff's stated reason for removing her from the training workshop — her disruptive behavior — was somehow a pretext for discrimination.

### 3. Termination of Employment

In challenging her termination, Plaintiff appears to be making a disparate discipline claim under Title VII and the ADEA, arguing that she was treated more harshly than Ms. Wormley for engaging in the same misconduct, and was treated more harshly than other employees who engaged in similar misconduct. Defendant contends that Plaintiff cannot establish a *prima facie* case of discrimination with respect to her termination because none of the comparators she identifies are *similarly situated*. In addition, Defendant argues that Plaintiff fails to rebut FEMA's legitimate, nondiscriminatory reason for terminating her, which was Plaintiff's involvement in a physical altercation with a coworker.

Plaintiff contends that Saucha Wormley was treated more favorably than herself, because Ms. Wormley was merely suspended due to their physical altercation while Plaintiff was terminated. In addition, Plaintiff disputes FEMA's underlying finding that she was the aggressor in the altercation, and

states that when FEMA investigated the incident some of the employees who witnessed the incident lied about what really happened. (ECF No. 16, at 3-4). In addition, Plaintiff points to several other employees who purportedly received more favorable treatment after engaging in a physical altercation, stating that: "two other females who actually had a physical altercation outside of FEMA's property, [FEMA] separated them for two weeks then released them, but I did not get that treatment[.] I arrived to work the next day to be sent home and [terminated.]" (ECF No. 16, at 4).

"In order to establish a *prima facie* case of disparate discipline under Title VII plaintiffs must show that: (i) they are members of a protected class; (ii) the prohibited conduct in which they engaged was comparable in seriousness to misconduct of employees outside the protected class; and (iii) disciplinary measures enforced against them were more severe than those enforced against other employees." *Jenkins v. Baltimore City Fire Dept.,* 862 F.Supp.2d 427, 452 (4th Cir. 2012) (*citing Cook v. CSX Transportation Corp.,* 988 F.2d 507, 510 (4th Cir. 1993)); *see Nesbitt v. University of Maryland Medical System,* No. WDQ-13-0125, 2013 WL 6490275, at *6 (D.Md. 2013) (stating the *prima facie* elements of a discriminatory disparate discipline claim, which are the same under Title VII and the ADEA).

Defendant has argued that Plaintiff has not proven a *prima facie* case because Ms. Wormley is not a proper comparator considering that her misconduct was not as severe as Plaintiff's and it is unclear whether Ms. Wormley is outside of Plaintiff's protected classes. Critically, *at the time FEMA terminated her employment*, FEMA believed, based on the results of its investigation, that Plaintiff's and Ms. Wormley's misconduct were not of equal severity.[6]   Defendant notes that when it concluded its investigation of the incident Plaintiff had admitted that she kicked Ms. Wormley, whereas it did not uncover any evidence "to substantiate that Ms. Wormley hit Ms. Coleman." (ECF No. 10-3, at 99).   In his affidavit, Jose Centeno addresses the rationale for the differential discipline accorded to Plaintiff versus Ms. Wormley:   "Based upon the witness testimony, it was clear that Ms. Coleman was the aggressor in the incident.   Ms. Wormley was not terminated because both she and the other witnesses stated that Ms. Wormley did not use physical violence.   [Instead,] Ms. Wormley was suspended from

---

[6] Plaintiff's claim for disparate discipline as to the other comparators she identifies also fails because she does not provide enough information about them to establish an inference that they were similarly situated and treated more favorably than she.   Moreover, Plaintiff admits that both of these women ultimately received the same discipline she did — termination of employment — she only takes issue with the fact that they were permitted to work for two weeks, while their incident was being investigated before they were terminated.   (ECF No. 10-3, at 61).

duty and pay" for her misconduct.  (ECF No. 10-3, at 80-81).
The affidavits of other FEMA supervisors confirm the same
rationale for why Plaintiff was terminated while Ms. Wormley was
merely suspended.  (ECF No. 10-3, at 74 and 88).  Moreover,
Plaintiff has failed to provide any evidence that Defendant's
legitimate, nondiscriminatory reason for enforcing a more severe
disciplinary measure against Plaintiff than Ms. Wormley —
namely, that Plaintiff engaged in physical violence, whereas Ms.
Wormley was only found to have used profanity — was a pretext
for discrimination.

### B.    Retaliation

Defendant contends that Plaintiff has abandoned her
retaliation claim because she only mentions her prior protected
activity briefly in her complaint and the remainder of the
complaint focuses on the three incidents of disparate treatment.
(ECF No. 10-1, at 15-16).  Defendant also argues that Plaintiff
fails to mention any facts that establish a retaliation claim.
In Plaintiff's opposition, however, she asserts that she filed
an "EEO Complaint" in April 2006 and that "this is when all the
trouble started;" she subsequently names the three incidents
discussed above and appears to be arguing these incidents were
due to her filing of the EEO complaint.  In addition, her
complaint clearly indicates she filed a second EEO complaint on
October 2, 2006, alleging discrimination and "reprisal for prior

protected EEO [activity]." (ECF No. 1, at 1). Defendant expects too much of a *pro se* Plaintiff. Although she does not expressly identify her claim as one of retaliation, when liberally construing the facts presented by Plaintiff, it appears that Plaintiff intended to assert a retaliation claim.

Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in a protected activity, (2) an adverse employment action was taken against her, and (3) the protected activity was causally connected to the adverse action. *See Holland v. Washington Homes, Inc.,* 487 F.3d 208, 218 (4th Cir. 2007) (*citing Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997)). Unlike a discrimination claim, a plaintiff need not establish an "ultimate employment decision" to make out her *prima facie* case; rather, she must show only that the action would be seen as materially adverse through the eyes of a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). Actions like "petty slights, minor annoyances, and

simple lack of good manners" are insufficient to support a retaliation claim, even under this lower standard. *Id.* Because Plaintiff has presented no direct evidence of retaliation, her claim will be analyzed under the *McDonnell Douglas* framework. "Importantly, although intermediate evidentiary burdens shift back and forth under this framework, [Plaintiff retains] the ultimate burden of persuading the trier of fact, [] that her engagement in the protected activities was a "but for" cause of her [termination]." *Staley v. Gruenberg,* 575 F.App'x 153, 155 (4th Cir. 2014) (internal citation and quotation marks omitted) (*citing Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)).

Plaintiff's first two challenged actions, receipt of the LTE rating and removal from the training workshop, relate to her filing an EEO complaint in April 2006, and fail to establish a *prima facie* case of retaliation because Plaintiff has not shown a causal connection between this prior EEO filing in April 2006 and these subsequent actions in August 2006. Plaintiff has not established that the persons making these determinations had *knowledge* at the time they made their decisions of her April 2006 EEO complaint. (ECF No. 10-3, at 75, 83, 89, and 101); *see Pepper v. Precision Valve Corp,* 526 F.App'x 335, 337 (4th Cir. 2013) ("[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse

employment action against an employee shortly after *learning of*
the protected activity." (alteration in original) (emphasis
added) (internal citation and quotation marks omitted)).
Moreover, the passage of at least four months between the
protected activity and these events undermines Plaintiff's
argument that her protected activity was the cause of FEMA's
actions. *Id.* (*citing Clark Cnty. Sch. Dist. v. Breeden,* 532
U.S. 268, 273 (2001) for the proposition that a "three-to-four-
month gap [between the protected activity and the employer's
adverse action] was insufficient to prove causal connection").
Accordingly, Plaintiff has not established a causal connection
between Defendant's actions and her earlier filing of an EEO
complaint, and she has certainly not established "but for"
causation, considering she has failed to provide evidence
rebutting Defendant's legitimate, nondiscriminatory reasons for
giving her an LTE rating and removing her from the training
workshop.

Plaintiff has established a *prima facie* case of retaliation
surrounding her termination.[7] The retaliation claim ultimately

---

[7] Plaintiff engaged in protected activities by filing EEO
complaints in April 2006 and October 2006. She suffered a
materially adverse employment decision when she was terminated
on October 6, 2006. She has also established a causal
connection, albeit weak, between the EEO activity and her
termination, because the evidence establishes that at least one
of her supervisors, Faye Green, who was involved in the decision
to terminate Plaintiff knew about her prior EEO activity because

23

fails because she has not met her evidentiary burden of proving by a preponderance of the evidence that Defendant's legitimate, nondiscriminatory reason for her termination was pretextual. Defendant asserts that its termination of Plaintiff was due to her physical altercation with Ms. Wormley. (ECF No. 10-3, at 191-92). Defendant's assertion is supported by affidavits from the various decision makers involved in her termination decision, who indicate that Plaintiff's kicking of Ms. Wormley was the sole reason FEMA decided to terminate her. (*See, e.g.,* ECF No. 10-3, at 75 and 99-100). Other than Plaintiff's own speculative assertions that her termination was due to retaliation, she has put forth no evidence to support this contention. (ECF No. 10-3, at 58-62).

## IV.  Conclusion

For the foregoing reasons, the motion filed by Defendant will be granted.  A separate order will follow.


_____
                        /s/
DEBORAH K. CHASANOW
United States District Judge

---

she was interviewed about an EEO complaint Plaintiff filed in late August 2006. (ECF No. 10-3, at 40 and 100).